# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                              Plaintiff,<br><br>      vs.<br><br>PRESTO TELECOMMUNICATIONS, INC., AND ALFRED LOUIS VASSALLO, JR. aka BOBBY VASSALLO,<br><br>                              Defendants. | CASE NO. 04cv163-IEG(WMc)<br><br>Order Granting Garrison & McInnis's Motion to Require Receiver to Pay Remaining Proceeds to Satisfy Lien<br>[Doc. No. 894] |

The law firm of Garrison & McInnis, L.L.P. ("G&M") moves the Court for an order requiring the Receiver to pay to it the sum of $285,261.51, or the remaining proceeds from the sale of the real property located at 1329 West Muirlands Drive in La Jolla. G&M argues it is entitled to the remaining proceeds from the sale pursuant to a valid and perfected lien it held against the property. The SEC and the Receiver filed oppositions. G&M filed a reply.

A hearing was held before Chief Judge Irma E. Gonzalez on August 27, 2007. Following the hearing, the Court ordered G&M to submit supplemental briefing regarding the amount of fees it claims. G&M has submitted its supplemental briefing and declarations, and the Receiver and SEC have filed supplemental responses.

### *Background*

Presto Communications and Vassallo initially retained G&M on or about May 2, 2000, to provide counsel regarding an employment dispute with a Presto employee. [Declaration of Gregory Garrison in Support of Reply ("Garrison Decl."), Doc. No. 902, Attachment #2, ¶ 3.] Since that time, G&M has represented Presto and Vassallo, and other officers and directors of Presto in seventeen separate lawsuits other than this one. [Id.; Declaration of Donald McInnis in Support of Reply ("McInnis Decl."), Doc. No. 902, Attachment #1, ¶ 3; Declaration of Donald McInnis in Support of Reply Regarding Motion for Court Approval of Foreclosure Sale ("McInnis Foreclosure Decl."), Doc. No. 134, ¶ 4 .]

By the middle of 2003, Presto owed G&M a substantial sum in past due attorneys fees. [Garrison Decl., ¶ 4.] Although Presto wanted G&M to continue to work on the pending litigation matters, G&M refused to do so without a guarantee of payment. [Id.] As a result, on July 8, 2003, G&M accepted a promissory note in the amount of $600,000 in favor of G&M. The note was secured by a deed of trust on the 1329 West Muirlands Drive property. [Id.; G&M's Notice of Lodgment in Support of Motion ("G&M NOL"), Exhibit A.] The promissory note and deed of trust were both signed by A.L. Vassallo and Cynthia J. Vassallo.

After the filing of this action, G&M submitted a claim for fees accrued prior to the appointment of the Receiver in the amount of $268,611.86. [G&M Reply NOL, Exhibit I.] The proof of claim reflects work done on twelve matters, including in defense of the SEC's subpoenas. [Id.; Garrison Reply Decl., ¶ 6.] According to the supplemental briefing provided by G&M after the August 27, 2007 hearing, at the time the Vassallos executed the promissory note and deed of trust on July 8, 2003, Presto Communications owed G&M $96,734.23 in legal fees, $5,405.70 of which pertained to that firm's defense of the SEC's investigation. [Supplemental Response, Notice of Lodgment, Doc. No. 909, Exhibit B.] In addition, contrary to the amount set forth in the G&M proof of claim filed August 13, 2004, G&M's supplemental briefing shows that as of January 24, 2004, when the Receiver was appointed, Presto Communications owed G&M $193,017.10 in legal fees, $6,483.70 of which were related to that firm's defense of the SEC's investigation. [Id.]

On February 7, 2007, the Court granted the Receiver's motion to sell the real property located at 1329 West Muirlands Drive. After the residence was sold, all secured liens were paid. In addition, the Court authorized the Receiver to pay $150,000 to Bank of America in satisfaction of its lien, which was superior to G&M's. After payment of the undisputed liens, there is approximately $134,870 in proceeds remaining from the sale of the property. Currently, two parties seek those remaining proceeds: G&M and the Receiver. G&M argues it is entitled to the remaining proceeds because it has a valid, perfected lien, entered into at arms length in consideration for legal services rendered.

## *Discussion*

The SEC and Receiver oppose G&M's motion for payment of the sale proceeds in satisfaction of G&M's lien. The SEC and Receiver argue (1) the deed of trust is invalid on its face, (2) investor funds were used, in part, to purchase the home such that all remaining proceeds should be deemed investor funds, (3) there are questions about the validity of the lien, including the timing of the parties' agreement, the amount of the lien, and the lack of supporting documentation, and (4) G&M is not entitled to any fees because it assisted Vassallo in attempting to avoid the SEC's investigation and continued to represent Vassallo in this litigation, contrary to the interests of Presto.

*1. Facial Validity of the Lien*

The SEC and Receiver argue the deed of trust is invalid on its face because it was signed by the Vassallos after they transferred the West Muirlands Drive property to the Vassallo Family Trust. The SEC and Receiver argue the Trust, not the Vassallos, owned the home and Mr. and Mrs. Vassallo had no authority to further encumber the property.

In response, G&M points out that although the Vassallos executed a grant deed transferring the West Muirlands Drive property to the Vassallo Family Trust on December 13, 2002, that deed was not recorded until September 15, 2003. G&M's deed of trust was recorded on July 8, 2003. G&M cites to Cal. Civ. Code §§ 1213 and 1214 which protect the interests of a bona fide or good

1 faith encumbrancer, created by a recorded instrument, against prior unrecorded interests.[1]

2 Under California law, it is well established that priority is determined according to time of
3 recording, regardless of the time of transfer. Bratcher v. Buckner, 90 Cal. pp. 4th 1177, 1185
4 (2001). As a result, the SEC and Receiver must explain why G&M was not entitled to rely upon
5 the record title (in the name of the Vassallos and not the Vassallo Family Trust) and should not be
6 considered good faith encumbrancers. First Fidelity Thrift & Loan Ass'n v. Alliance Bank, 60
7 Cal. App. 4th 1433, 1440-41 (1998) ("a good faith encumbrancer for value who first records takes
8 its interest in the property free and clear of unrecorded interests.").

9 The SEC and Receiver fail to show that G&M had knowledge or notice the Vassallos had
10 signed a grant deed transferring the 1329 West Muirlands Drive property to the Vassallo Family
11 Trust. At the time of the hearing, counsel for the SEC made reference to an unsworn statement by
12 Cynthia Vassallo in a document filed in relation to her motion for determination of separate
13 property rights [Doc. No. 860]. In that document, Mrs. Vassallo stated the July 8, 2003 G&M lien
14 was "recorded by an overzealous Donald McInnis, Esq. . . . drawn by McInnis and signed under
15 duress by the Vassallos' [sic]." [Doc. No. 860, p. 6.] Mrs. Vassallo went on to state that "[n]ot
16 only did McInnis incorrectly style the document, but in his haste, he failed to gain the signature of
17 Francisco Sanchez, the correct Trustee." [Id.] Mrs. Vassallo's self-serving, unsworn statement
18 does not satisfy the burden of demonstrating that G&M knew that the West Muirlands Drive
19 property was held by the Vassallo Family Trust rather than by the Vassallos as reflected by the
20 record title. First Fidelity Thrift & Loan Ass'n, 60 Cal. App. 4th at 1441-42 (burden is upon
21 opposing party to present evidence showing issue of fact as to whether encumbrancer had notice of
22 prior claim). As a result, the Court finds the G&M deed of trust is facially valid.

---

[1] G&M also argues the SEC and Receiver are judicially estopped from arguing the property was owned by the Trust, and therefore could not be encumbered by the Vassallos, based upon their prior arguments to the Court that the property belonged to the Vassallos personally. G&M misconstrues the SEC and Receiver's arguments. In the prior motion, the SEC and Receiver argued there was insufficient documentation of the terms and conditions of the Trust, such that the Court could not determine whether Mrs. Vassallo retained her separate property interest or whether such interested was commuted to a community property interest. In short, the SEC and Receiver's arguments with regard to the prior motion of Mrs. Vassallo are not inconsistent with their argument in opposition to G&M's motion.

### 2. Use of Investor Funds to Purchase Property

The SEC argues that G&M should not be permitted to recover any portion of the sales proceeds based upon the Court's earlier finding that investor funds were used in part to purchase the West Muirlands Drive property. The SEC argues the Court should use its broad equitable powers to deem the remainder of the sale proceeds to be investor funds and not allow the proceeds to be used to pay G&M's fees.

Although the Court has broad equitable powers, see SEC v. Wencke, 783 F.2d 829, 836-37 (9th Cir. 1986) and SEC v. Hardy, 803 F.2d 1034, 1037 (9th Cir. 1986), neither the SEC nor the Receiver have provided the Court with authority for the proposition that an otherwise valid lien interest may be voided based upon equitable considerations. If G&M has a valid lien it stands in the same shoes as the other lienholders who have already been paid out of the sale proceeds. If the SEC and Receiver wanted the Court hold the sale proceeds as investor funds, they should have asked for such remedy before other lienholders, such as Bank of America, were paid. Unless the lien is invalid or G&M has engaged in some type of culpable conduct, the Court finds no equitable basis to treat G&M's lien interest differently from those which have already been satisfied out of the proceeds of the sale of the home.

### 3. The Questionable Validity of the Lien

The SEC and Receiver also argue the Court should find the lien invalid for several reasons including the timing of the parties' agreement, the amount of the lien, and the lack of supporting documentation. The SEC points out that although G&M and the Vassallos entered into the promissory note and executed the deed of trust before the SEC filed this action, the documents were executed in the midst of the SEC's administrative investigation of Presto and Vassallo. The deed of trust was recorded after the SEC had issued subpoenas for financial records of Presto, Mr. and Mrs. Vassallo, and other Presto employees during the course of its investigation. Six days before G&M and the Vassallos entered into the promissory note and executed the deed of trust, Bobby Vassallo stipulated to the entry of a court order compelling his testimony in the Commission's investigation. Within a week after the Vassallos executed the promissory note and G&M recorded the deed of trust, Bobby Vassallo appeared for his examination before the SEC.

At that examination, Vassallo asserted his Fifth Amendment right and refused to answer any questions.

In light of the timing, the SEC argues it is reasonable to infer the deed of trust was secured "with the expectation that the Commission was going to file charges against Vassallo and, presumably, to thwart Commission efforts to seek repayment of investor funds through disgorgement of ill-gotten gains . . . ." [SEC Opposition, p. 9.] The SEC also points out the promissory note and deed of trust were for the amount of $600,000, but Presto and Vassallo at the time owed G&M fees of only $96,734.23.

Before addressing the SEC and Receiver's arguments, the Court must address G&M's argument that the SEC and Receiver lack standing to dispute the amount of the G&M lien. First, the SEC and Receiver do not directly attack the amount claimed by G&M, but rather attack the validity of the lien based upon the fact Presto and Vassallo did not owe G&M anywhere near the $600,000 reflected by the deed of trust. However, G&M is not seeking to recover money in excess of the $285,323.80 in fees incurred by Presto and Vassallo. The SEC and Receiver do not attack the amount of the fees as set forth in G&M's billings, but instead argue the lien is invalid because it was not supported by adequate consideration. As a result, the Court finds the SEC and Receiver have standing, as judgment lienholders, to challenge the validity of the lien.

Even assuming the SEC and Receiver were challenging the amount of the lien, an equity receiver is vested with "complete jurisdiction and control of all . . . property" within the receivership estate. 28 U.S.C. § 754; <u>SEC v. American Capital Investments, Inc.</u>, 98 F.3d 1133, 1144 (9th Cir. 1996). The real property at 1329 West Muirlands Drive was part of the Receivership estate in this case and the proceeds from the sale are now part of the Receivership estate. Because G&M seeks to deprive the Receivership of the remaining proceeds from the sale of the house, the Receiver has standing to challenge both the validity of the G&M deed of trust and the distribution of the remaining proceeds.

Addressing the SEC and Receiver's arguments, the Court finds neither the timing nor the amount of G&M's lien renders it invalid. G&M represented Presto and Vassallo in litigation matters prior to the SEC's investigation, and Presto wanted the firm to continue to represent it in

the various litigation matters as well as in defense of the SEC's investigation. The Court does not doubt that G&M knew Presto and Vassallo may not be able to pay its legal fees if the SEC took action based upon its investigation. G&M may have entered into the promissory note with the Vassallos personally, and secured the deed of trust on their home, knowing it was possible Presto would not have funds available to pay its mounting legal fees. Although the SEC and the Receiver label such conduct a "sham," the Court is not so offended by the idea that attorneys would enter into an agreement to secure payment of fees for past and future services.

On July 8, 2003, when G&M entered into the promissory note with the Vassallos, and recorded the deed of trust, Presto and Vassallo had incurred $96,734.23 in legal fees for work performed by G&M. As G&M anticipated, Presto and Vassallo incurred almost another $100,000 in fees in the six months after it recorded the deed of trust, none of which they were able to pay. As of the time the Court appointed the Receiver on January 24, 2004, Presto and Bobby Vassallo had incurred $193,017.10 in legal fees for G&M's services, most of which pertained to legal matters other than the SEC's investigation. As a result, the Court finds that neither the timing of the deed of trust, nor the amount of the lien vis-a-vis the fees incurred, render the lien invalid. The Court also finds G&M has provided sufficient supporting documentation of the amount of fees it claims.

*4. G&M's Efforts to Assist Vassallo in Avoiding the SEC's Investigation and the Alleged Conflict of Interest*

Finally, the SEC and the Receiver argue G&M should not receive any of the remaining proceeds from the sale of the property because it assisted Vassallo in his efforts to avoid the SEC's investigation and then continued to represent Vassallo in this litigation contrary to the interests of Presto. The SEC and the Receiver's argument essentially boils down to the following – Bobby Vassallo cheated investors out of millions of dollars; G&M represented Bobby Vassallo and helped him try to avoid the SEC's investigation into the fraud; therefore G&M should not be entitled to rely upon its deed of trust to secure payment of any legal fees (even for work on unrelated litigation matters for Presto). The SEC and the Receiver argue G&M had a conflict of interest when it continued to represent Vassallo, contrary to the interests of Presto, especially after the Receiver was appointed. The Receiver also argues G&M's representation of Vassallo and a

1  group of other loyal investors in an attempt to avoid the entry of the preliminary injunction and
2  appointment of the Receiver was a conflict of interest.

3  　　　　The Court need not decide whether G&M would be entitled to fees for services performed
4  after January 24, 2004, based upon the alleged conflict of interest, because G&M's outstanding
5  legal fees prior to that date exceed the amount of the remaining proceeds.  The Court rejects the
6  proposition that G&M should not be entitled to any recovery on its deed of trust because it
7  represented Presto and Vassallo in the SEC investigation.  Presto and Vassallo were entitled to
8  seek legal representation, and G&M provided legal representation in anticipation that it would be
9  paid for those services.  Even if the Court excludes the $6,483.70 in fees G&M charged for
10 representing Presto and Vassallo with regard to the SEC's investigation before appointment of the
11 Receiver in January 2004, Presto and Vassallo still incurred $186,533.40 in legal fees for G&M's
12 services on other litigation matters.

13 　　　　The Court is aware that the remaining proceeds from the sale of the home may be the only
14 asset available to the Receiver.  However, the Court finds the G&M deed of trust is a valid lien.
15 Although the Court has broad equitable powers when administering a Receivership estate, the SEC
16 and the Receiver have not shown culpable conduct on the part of G&M that would justify the
17 Court in exercising those powers to deny G&M's motion.

18 　　　　　　　　　　　　　　　　　*__Conclusion__*

19 　　　　Therefore, for the reasons set forth herein, the Court GRANTS Garrison & McInnis's
20 motion [Doc. No. 894].  The Court finds Presto and Vassallo owe Garrison & McInnis
21 $186,533.40 in legal fees, not including fees related to the SEC's investigation, prior to
22 January 24, 2004.  Those legal fees were secured by G&M's valid deed of trust on the Vassallos'
23 home at 1329 West Muirlands Drive.  As a result, G&M is entitled to satisfaction of its lien out of
24 ///
25 ///
26 ///
27 ///
28 ///

the remaining proceeds from the sale of that home. The Receiver is ordered to pay all of the remaining sale proceeds, which the Court believes totals approximately $134,870, to the law firm of Garrison & McInnis within forty-five (45) days of the filing of this Order.

**IT IS SO ORDERED**.

**DATED: October 11, 2007**

*/s/ Irma E. Gonzalez*
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**