# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                    Plaintiff,<br><br>    vs.<br><br>PRESTO TELECOMMUNICATIONS, INC., AND ALFRED LOUIS VASSALLO, JR. aka BOBBY VASSALLO,<br><br>                    Defendants. | CASE NO. 04cv163-IEG(WMc)<br><br>Order Denying Receiver's Motion to Enforce Compromise Agreement [Doc. 934] |

The Receiver moves the Court for an order enforcing a Compromise Agreement he entered into with investor/claimant Michael O'Shea. The Receiver seeks an order of the Court for judgment in favor of the Receiver and against Mr. O'Shea pursuant to the Compromise Agreement for 25% of the settlement amount Mr. O'Shea received from Philadelphia Indemnity Company. Mr. O'Shea has filed an opposition and the Receiver has filed a reply.

A hearing was held before Chief Judge Irma E. Gonzalez on April 27, 2009. After that hearing, the Court required Mr. O'Shea to file supplemental briefing, which he has now done.

Upon review, for the reasons set forth herein, the Court DENIES the Receiver's motion.

///

### *Background*

Michael O'Shea is an investor creditor of Presto Telecommunications, Inc., and submitted a claim in this case for $2.7 million, plus an additional $832.986.75 for attorneys' fees, litigation expenses, and interest for a total claim of $3,532.986.76 . Prior to the commencement of this action, in February 2003, Mr. O'Shea commenced an action in San Diego County Superior Court against Presto, Alfred Vassallo, Nick Costas, and Autocom, Ltd.  On January 27, 2004, in conjunction with the appointment of the Receiver, this Court issued a TRO staying all actions against Presto and freezing all assets of Presto, Vassallo, and affiliated entities.  On March 1, 2004, this Court issued a Preliminary Injunction, appointing a permanent Receiver and continuing the stay and freeze orders.  Based upon the TRO and Preliminary Injunction, on March 19, 2004, the Superior Court stayed Mr. O'Shea's entire action in that court.[1]

Presto maintained a directors and officers insurance policy ("D&O Policy") through Philadelphia Indemnity Company which contained a $3 million liability limit for each policy period. Presto initially maintained the D&O Policy for the period July 2, 2002 through July 2, 2003.  Presto renewed the D&O Policy for the period July 2, 2003 through July 2, 2004, but at some point during that year Philadelphia Indemnity canceled the policy for non-payment.  Both of these policies were "claims-made" policies, requiring that an insured tender notice of a claim to the insurer during the policy period.  During the course of the state court case, Mr. O'Shea learned that Presto had tendered his lawsuit to Philadelphia Indemnity during the initial 2002-2003 policy period.  In addition, after the initiation of this action, on May 4, 2004, the Receiver made a claim against the 2003-2004 policy.  Philadelphia Indemnity, however, denied the Receiver's claim because it was submitted after the policy had been canceled for non-payment. [Declaration of Thomas Lennon in Support of Motion ("Lennon Decl."), Doc. No. 934, ¶ 10.]

After this Court entered the Preliminary Injunction, and after the Superior Court stayed Mr. O'Shea's action in its entirety, Mr. O'Shea approached the Receiver seeking an agreement to allow him to continue to litigate the state action as against Costas and Autocom, neither of whom

---

[1]Although neither Costas nor Autocom were named in this case, they were both affiliated with Presto and Vassallo. The Superior Court therefore stayed the entire action pursuant to the Court's Preliminary Injunction.

were named as Defendants in this case. In an April 12, 2004 letter to the Receiver, Mr. O'Shea's counsel explained Mr. O'Shea was able to seek a recovery under the first policy for the 2002-2003 time period because Presto tendered Mr. O'Shea's claim to the company during the policy period. Mr. O'Shea's counsel pointed out he was unaware of any other shareholder suits filed, or any other claims tendered, during the first policy period. [Declaration of Michael O'Shea in Support of Opposition, Doc. No. 937, Exhibit B.]

On April 22, 2004, before the Receiver responded to his April 12, 2004 letter, Mr. O'Shea moved the Superior Court to partially lift the stay to permit him to proceed as to Costas, Autocom and unidentified DOE defendants. The Receiver opposed Mr. O'Shea's motion, based upon the Preliminary Injunction, arguing Mr. O'Shea's action sought to recover through, and substantially deplete, Presto's D&O Policy. The Receiver argued Mr. O'Shea should not be permitted to deplete those policies ahead of, and to the detriment of, the remaining 800 or so Presto shareholders who also had claims against Presto's officers and directors. On May 14, 2004, the Superior Court denied Mr. O'Shea's motion to partially lift the stay.

More than a year later, on July 25, 2005, Mr. O'Shea again approached the Receiver about allowing him to proceed with his state court action against Costas and Autocom. Mr. O'Shea argued that neither the Receiver nor any of the other shareholders had any ability to recover under the 2002-2003 D&O policy because no other claim had been tendered during that period. Mr. O'Shea's counsel suggested that in exchange for the Receiver allowing him to proceed with his state court action, Mr. O'Shea would be willing to contribute 20% of any recovery from the insurance policy to the receivership estate and also reduce his claim against the estate by twice the amount he collects from the policy. [Lennon Decl., Exhibit B.] Thereafter, the parties negotiated a Compromise Agreement, which they executed in August 2005.

The Compromise Agreement provided that the Receiver would "take any and all actions necessary to partially lift the stays in the Federal Action and in the State Action, so that O'Shea can pursue his claims against Costas, Autocom, Ltd. and unidentified DOE defendants, but not Presto or Vassallo, in the State Action." [Lennon Decl., Exhibit A, § 5.1.] In exchange, Mr. O'Shea agreed to share any recovery he received with the receivership estate. Specifically, Mr. O'Shea agreed to pay to the Receiver, for the benefit of other claimants, 25% of any funds he

1  recovered from the state action. Mr. O'Shea also agreed to reduce his allowed claim based upon
2  the amount he recovered according to a specific formula. The Compromise Agreement required
3  Mr. O'Shea to "immediately inform the Receiver of and account for any such recovery." [Id.
4  § 4.3.]

5  On September 8, 2005, the Court approved the Compromise Agreement and modified the
6  Preliminary Injunction to allow Mr. O'Shea to proceed in state court. Thereafter, Mr. O'Shea
7  moved to modify the stay in the Superior Court, and the Receiver filed a notice of non-opposition.
8  On December 2, 2005, the Superior Court granted Mr. O'Shea's motion and modified the stay.
9  Based upon the Compromise Agreement, the Receiver cooperated with Mr. O'Shea in his
10 prosecution of claims against Costas and Autocom, resulting in the Superior Court's entry of
11 judgment against Costas in the amount of $4,397,068 on September 21, 2007. [Lennon Decl.,
12 ¶ 15, Exhibit G.]

13 On January 6, 2009, Mr. O'Shea's counsel wrote to the Receiver, informing him that Mr.
14 O'Shea had entered into a settlement agreement with Philadelphia Indemnity as to the state court
15 action, under which Mr. O'Shea received a settlement payment. Mr. O'Shea did not, however,
16 disclose the amount or terms of the payment. Instead, Mr. O'Shea's counsel stated he did not
17 believe payment to the Receiver was appropriate because the Compromise Agreement "lacked
18 consideration" and was "antithetical to the Receiver's duties and responsibilities." [Lennon Decl.,
19 ¶ 16, Exhibit H.] When attempts to informally resolve the issue were unsuccessful, the Receiver
20 filed this motion.

21 In his supplemental briefing following the April 27, 2009 hearing, Mr. O'Shea disclosed
22 the amount of the settlement he received from Philadelphia Indemnity, the amount of attorneys
23 fees and costs he incurred in obtaining the judgment against Costas in the San Diego County
24 Superior Court, and the amount of attorneys fees and costs he incurred in connection with his
25 litigation against Philadelphia Indemnity.

26                              *Discussion*

27 Pursuant to 28 U.S.C. § 754, federal receivers have broad authority to administer, retrieve,
28 and dispose of assets belonging to the receivership. SEC v. Ross, 504 F.3d 1130, 1145 (9th Cir.
2007). Likewise, district courts have broad equitable authority to administer and supervise an

1  equity receivership.  SEC v. Capital Consultants, LLC, 397 F.3d 733, 738 (9th Cir. 2005).

2  Mr. O'Shea argues[2] he should be relieved of the obligation to pay the Receiver 25% of his
3  recovery from Philadelphia Indemnity, pursuant to the terms of the Compromise Agreement,
4  because the agreement is unjust, unreasonable, and unfair.  He argues his consent to the agreement
5  was vitiated by severe economic duress and the agreement lacked consideration because the
6  Receiver never had any legitimate claim to the proceeds of the Philadelphia Indemnity D&O
7  Policy for the 2002-03 time period.

8  The Court finds Mr. O'Shea's arguments persuasive and declines, as a matter of equity, to
9  enforce the agreement against Mr. O'Shea.  Mr. O'Shea was one of the investors whose rights the
10 Receiver had a duty to protect.  Although the Receiver believed, at the time of the Agreement, that
11 the Receivership Estate had a legitimate claim to the proceeds of the Philadelphia Indemnity D&O
12 Policy, Mr. O'Shea has demonstrated his was the only claim submitted against the policy for the
13 2002-03 time period.  The Receiver made a claim against the D&O Policy for the 2003-04 policy
14 period early in this case.  However, after Philadelphia Indemnity denied the Receiver's claim, the
15 Receiver did not pursue that claim further in the year or so before he entered into the Compromise
16 Agreement with Mr. O'Shea.

17 The Receiver has not shown any basis upon which the D&O Policy for the 2002-03 time
18 period could have been considered an asset of the Receivership Estate.  As a result, there was no
19 basis for the Receiver to oppose Mr. O'Shea's motion to lift the stay of the Superior Court action
20 to allow Mr. O'Shea to pursue a judgment against Mr. Costas and, ultimately, Philadelphia
21 Indemnity.  Mr. O'Shea, like many other investors, lost a significant amount of money as a result
22 of his investment in Presto Communications.  Unlike any of the other investors, however, Mr.

---

[2] In his opposition to the Receiver's motion, Mr. O'Shea also argued the Court lacked personal jurisdiction over him and that the Court should not summarily enforce the settlement agreement.  The Court disagrees.  The Court has jurisdiction over Mr. O'Shea because he filed a claim in this case and then entered into the Compromise Agreement which resulted in the Court's modification of the Preliminary Injunction.  See In re PNP Holdings Corp., 99 F.3d 910, 911 (9th Cir. 1996) (party who files proof of claim in bankruptcy proceeding consents to the bankruptcy court's exercise of personal jurisdiction); Ross, 504 F.3d at 1149 (acknowledging that consent to court's exercise of personal jurisdiction may occur in number of ways) invoking the Court's jurisdiction. In addition, the Court can summarily enforce a settlement such as this so long as the party against whom enforcement is sought is afforded due process.  SEC v. Wencke, 783 F.2d 829, 836-37 (9th Cir. 1986) (disgorgement summary proceedings against third-parties do not violate due process where parties were given notice and opportunity to present contentions).

O'Shea was pursuing legal action to recover some of those losses and was preparing for trial when this case was filed. Also unlike any of the other investors, Presto submitted his claim to Philadelphia Indemnity during the 2002-03 policy period.  Thus, Mr. O'Shea holds a unique position vis-a-vis the other investor creditors who have made claims in this case.

After the state court initially stayed Mr. O'Shea's action against Costas and Autocom, and after the Receiver successfully opposed Mr. O'Shea's attempt to have that stay lift, Mr. O'Shea was placed in a position of severe economic distress.  He was forced to choose between giving the Receiver a portion of any recovery he obtained through the state court proceedings, or losing any chance he had of recovering any of his losses. The fact that Mr. O'Shea, through counsel, suggested the compromise does not vitiate the very real burden of the dilemma Mr. O'Shea faced. Because the Receiver had no basis upon which to recover under the Philadelphia Indemnity D&O Policy for the benefit of the Receivership Estate, the Court finds Mr. O'Shea should not have been forced to compromise his claim.

Mr. O'Shea spent years pursuing the state court action against Costas and Autocom, and then Philadelphia Indemnity Company, at his own substantial expense.  The Court finds it would be inequitable to now require Mr. O'Shea to pay the Receiver 25% of the proceeds of the settlement proceeds.

### *Conclusion*

For the reasons set forth herein, the Court DENIES the Receiver's motion to enforce the Compromise Agreement.

**IT IS SO ORDERED**.

**DATED: May 14, 2009**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**