JOHN M. McCOY III, Cal. Bar No. 166244
E-mail: mccoyj@sec.gov
GREGORY C. GLYNN, Cal. Bar No. 039999
E-mail: glynng@sec.gov
DAVID S. BROWN, Cal. Bar No. 134569
E-mail: browndav@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Rosalind R. Tyson, Regional Director
Michele Wein Layne, Associate Regional Director
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036
Telephone: (323) 965-3998
Facsimile: (323) 965-3908

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>             Plaintiff,<br><br>      vs.<br><br>PRESTO TELECOMMUNICATIONS, INC.; ALFRED LOUIS VASSALLO, JR. aka BOBBY VASSALLO,<br><br>             Defendants. | Case No. 04 CV 00163 IEG (WMc)<br><br>**DECLARATION OF LOWELL FITZGERALD FILED IN SUPPORT OF THE *EX PARTE* APPLICATIONS OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION AND THE TEMPORARY RECEIVER FOR AN ORDER TO SHOW CAUSE RE CIVIL CONTEMPT AGAINST DEFENDANT ALFRED LOUIS VASSALLO, JR. AND ORDERS IMPOSING ADDITIONAL RELIEF**<br><br>JUDGE:      The Honorable Irma E. Gonzalez<br>DEPT:       Courtroom 1<br><br>Complaint Filed:      January 27, 2004<br>Trial Date:    Not Set |

04 CV 00163 IEG (WMc)

1
**DECLARATION OF LOWELL FITZGERALD**

2
I, Lowell Fitzgerald, declare, pursuant to 28 U.S.C. § 1746, as follows:

3
1.      I am over 18 years of age.  I have personal knowledge of each of the matters set

4
forth below.

5
2.      I make this declaration at the request of the staff of the Securities and Exchange

6
Commission ("SEC").

7
3.      I reside in Irvine, California and am 75 years old.  I worked as a chemical engineer

8
for many years and since my retirement in 1988 as a chemical engineer I have been involved in a

9
variety of small business ventures.

10
4.      I am related to Alfred Louis Vassallo, Jr. aka Bobby Vassallo ("Vassallo").

11
Vassallo's father and my mother were first cousins thereby making Vassallo and me second

12
cousins.  Before September 2009, I had never met Vassallo in person.

13
5.      In September 2009, I was introduced to Vassallo through my half-sister.  In or about

14
September 2009, Vassallo told me that he was in the wireless communications business.  Vassallo

15
told me that he had done business in Africa, Malta, Mexico, Panama, and the U.S.-Mexico border

16
region of Texas.  Vassallo told us that he left California for Texas so he could work on border

17
surveillance projects there.  I told Vassallo that my wife and I had spent a good amount of time in

18
French Polynesia and that French Polynesia was going to soon be connected by a fiber cable with

19
the rest of the world via a fiber cable originating in Hawaii.  I told Vassallo that the existence of a

20
new fiber cable to French Polynesia might present his company with some interesting business

21
opportunities. Later he called me and said there would be great chance for us to make some big

22
money in telecommunications in French Polynesia as a result of the fiber cable.   My wife and I

23
have visited French Polynesia for many years and we know a variety of business and former

24
government officials there.  Given our affinity for French Polynesia, I was interested in hearing

25
more about the business opportunities Vassallo described for us and at an early stage my wife

26
began to participate in my phone calls with Bobby.

27
6.      Vassallo told me and my wife that he would enter into a 50-50 business venture

28
with us to develop a wireless communications company in French Polynesia.  Vassallo told us that

1

if my wife and I put up one-half the costs of the business venture he would do the same, and we would split the profits of the business venture equally. Based on Vassallo's description of the business venture, I believed my wife and I would be in partnership with Vassallo and thereby be co-owners of this business with him. Vassallo said that we would be 50-50 partners. There was no written agreement documenting this arrangement. Vassallo assured us that a company in French Polynesia would be formed to provide the various communications services in French Polynesia that he described to us.

7.     Vassallo told us that he needed money to buy equipment to run communications systems in French Polynesia and he needed money to ship to French Polynesia via container communications equipment he was going to have stored in San Diego. Vassallo also told us he needed money to pay for certain expenses associated with developing the communications systems in French Polynesia.

8.     Vassallo told my wife and me that he could more than "double our money" from the French Polynesia communications systems he described. Vassallo told us we could expect to share 50-50 with him $2 million profit potential just from the initial build-out of the tsunami early-warning and surveillance systems, and the potential profits would accelerate thereafter. I believed what Vassallo told us.

9.     Starting in October 2009, my wife and I made a series of cash deposits into a bank account that Vassallo told us to deposit our investment money into. Vassallo told us to deposit our money into an account held in the name of Valley Wireless Holdings at Bank of America. Vassallo told us that Valley Wireless Holdings was his company. He never said anyone else was involved with him in that business. He told us that it was a holding company and it was the mother of all his communications ventures. Based on what Vassallo told us, I believed Vassallo owned Valley Wireless Holdings. At Vassallo's direction, my wife and I made a total of $90,000 in cash deposits into the Valley Wireless Holdings account on October 5, 2009 ($25,000), December 3, 2009 ($15,000), December 18, 2009 ($25,000), and December 31, 2009 ($25,000). Attached hereto as Exhibit 1 are true and correct copies of the customer receipts from Bank of America showing the foregoing deposits my wife and I made into the Valley Wireless Holdings bank

2

1   account.

2       10.     To my knowledge, I do not know whether Vassallo, in fact, put in an equal amount

3   into the business venture even though he told my wife and me he would contribute the same

4   amount that we did. In December 2009, I asked Vassallo to give me an accounting of what he did

5   with the funds invested by my wife and me up to that point in time, but he never provided one.

6   Although we asked him, Vassallo never told my wife and me with any particularity what

7   equipment was purchased with our money.

8       11.     From December 5 to 13, 2009, my wife and I were in Tahiti with Vassallo and

9   others including Vassallo's communications consultant, Clay Perrault, and a local consultant, Loic

10  Brigato, to explore development of a tsunami early-warning system. Through certain local

11  contacts in Tahiti, Vassallo and I made presentations to local Tahitian municipalities about

12  development of that system. Vassallo also told us about development of telephone and Internet

13  services for local businesses such as hotels as well as surveillance systems for local police and

14  traffic systems. Vassallo described that each of these systems could be developed through hooking

15  up to an ocean cable running from Hawaii to French Polynesia.

16      12.     In late 2009, Vassallo told my wife and me he wanted a local partner in the French

17  Polynesia business venture and talked about selling 25% of the business to one Gilbert Wane.

18  Vassallo said he wanted 500,000 Euros from Mr. Wane to be used as operating capital, etc. and a

19  document was prepared and circulated documenting that arrangement. A true and correct copy of

20  that document entitled "Summary of Memorandum of Terms for Newco" is attached as Exhibit 2.

21  To my knowledge, that proposed deal was never consummated.

22      13.     Vassallo and his consultant prepared some sales and informational materials for the

23  projects which were provided to me by them in both draft and final form. These included one

24  document entitled "(ECBS) Emergency Broadcast Warning System A Tsunami Warning System

25  for the Municipality of Papeete, Tahiti" and another document entitled "WiMax Networks for

26  Tahiti-Bora Bora." True and correct copies of these two documents are attached as Exhibits 3 and

27  4 respectively.

28      14.     Between January 11 and February 5, 2010, my wife and I returned to Tahiti to

3

1    follow up on the business venture with Vassallo.  When we met Vassallo there, he did not have

2    enough money to pay about $5,000 which was owed to the local consultant, Mr. Brigato.

3         15.    My wife and I paid a total of $24,165.19 in expenses for ourselves and Vassallo and

4    his consultant, Mr. Perrault, in connection with the proposed communications systems in French

5    Polynesia on our two trips to Tahiti in connection with Vassallo's business venture as described

6    above. Attached collectively hereto as Exhibit 5 are a summary of the expenses my wife and I paid

7    toward the French Polynesian business venture we had with Vassallo (which was prepared by my

8    attorney) plus itemized lists of and receipts for the expenses we paid for on those trips (which was

9    prepared by my wife).

10        16.    On January 4 and 6, 2010, I traded emails with Vassallo concerning several subjects

11   including two recent earthquakes that had taken place and tsunami early-warning systems like the

12   ones Vassallo wanted to develop in Tahiti, true and correct copies of which are attached hereto as

13   Exhibit 6. I note that Vassallo signed one email "Bobby Vassallo Valley Wireless" using the email

14   address bobbywireless@gmail.com. I also note Vassallo indicated in an email that he and Mr.

15   Perrault were purchasing additional equipment and Vassallo asked me to "please get another $25 in

16   there. I am not expecting to need any more."

17        17.    By the time we left Tahiti on February 4, 2010, it was apparent to me that none of

18   the proposed business opportunities in French Polynesia that Vassallo described would come to

19   fruition. To my knowledge, neither Vassallo nor Valley Wireless Holdings or any other venture

20   associated with Vassallo obtained any permits or approvals to develop and operate any kind of

21   communications system in French Polynesia.

22        18.    At no time did Vassallo disclose to my wife and me the existence of the SEC's

23   lawsuit against him; that the SEC was successful in obtaining a judgment of permanent injunction

24   against him issued by the United States District Court which enjoined him from violating the

25   securities registration and antifraud provisions of the federal securities laws; that the SEC was

26   successful in obtaining a judgment against him issued by the District Court that ordered him to pay

27   disgorgement and prejudgment interest, civil penalties, and the costs and expenses of the Presto

28   receivership totaling over $2 million; and that he had paid none of those sums.

                                                 4

1        19.    As of this date, despite my demands to Vassallo that he return our investment, my

2    wife and I have not received from Vassallo or Valley Wireless Holdings the return of any portion

3    of the $90,000 we invested with him, nor have we been reimbursed for any portion of the

4    $24,165.19 in expenses we incurred on behalf of ourselves, Vassallo and his consultant.

5        I declare under penalty of perjury under the laws of the United States of America that the

6    foregoing is true and correct.

7        Executed this 15th day of September, 2010, at Irvine, California.

8

9                                   _Lowell Fitzgerald_

10                                  Lowell Fitzgerald

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

Exhibit _____|_____ Page____ 6____

**Customer Receipt**

All items are credited subject to verification, collection, and conditions of the Rules and Regulations of this Bank and as otherwise provided by law. Payments are accepted when credit is applied to outstanding balances and not upon issuance of this receipt. Transactions received after the Bank's posted cut-off time or Saturday, Sunday, and Bank Holidays, are dated and considered received as of the next business day.

Please retain this receipt until you receive your account statement.

Thank you for banking with Bank of America.
Try Online Banking at www.bankofamerica.com



```
Tran 00025        10/05/2009 10:06
Entity NCS  CC 0002341 Tlr 00004
From Account      ********5239
To Account        ********8040

Deposit                   $25,000.00
```

Member FDIC
95-14-2005B  12-2008

---

**Bank of America**

**Customer Receipt**

All items are credited subject to verification, collection, and conditions of the Rules and Regulations of this Bank and as otherwise provided by law. Payments are accepted when credit is applied to outstanding balances and not upon issuance of this receipt. Transactions received after the Bank's posted cut-off time or Saturday, Sunday, and Bank Holidays, are dated and considered received as of the next business day.

Please retain this receipt until you receive your account statement.

Thank you for banking with Bank of America.
Try Online Banking at www.bankofamerica.com



```
Tran 00049        12/03/2009    15:47
Entity NCS  CC 0002341 Tlr 00003
Account           ********8040
R/T# 540740134
Deposit                   $15,000.00
```

Member FDIC
95-14-2005B  12-2008

---

**Bank of America**

**Customer Receipt**

All items are credited subject to verification, collection, and conditions of the Rules and Regulations of this Bank and as otherwise provided by law. Payments are accepted when credit is applied to outstanding balances and not upon issuance of this receipt. Transactions received after the Bank's posted cut-off time or Saturday, Sunday, and Bank Holidays, are dated and considered received as of the next business day.

Please retain this receipt until you receive your account statement.

Thank you for banking with Bank of America.
Try Online Banking at www.bankofamerica.com

```
Tran 000740       12/18/2009 11:50
Entity NCS  CC 0002341 Tlr 00010
From Account      ********5239
To Account        ********8040

Deposit                   $25,000.00
```

Member FDIC
95-14-2005B  12-2008

---

**Bank of America**

**Customer Receipt**

All items are credited subject to verification, collection, and conditions of the Rules and Regulations of this Bank and as otherwise provided by law. Payments are accepted when credit is applied to outstanding balances and not upon issuance of this receipt. Transactions received after the Bank's posted cut-off time or Saturday, Sunday, and Bank Holidays, are dated and considered received as of the next business day.

Please retain this receipt until you receive your account statement.

Thank you for banking with Bank of America.
Try Online Banking at www.bankofamerica.com

```
Tran 00092        12/31/2009 12:38
Entity NCS  CC 0002341 Tlr 00009
From Account      ********5239
To Account        ********8040

Deposit                   $25,000.00
```

Exhibit _____ Page _____ 7

# EXHIBIT 2

Exhibit ___2___ Page___8___

| | |
|---|---|
| **Security:** **Company Capital Stock/Units** | 10,000,000 Common Shares to be Authorized by Company, whereby the Parties to this Memorandum shall have the following respective ownership interests in the entity. |
| | 750,000 Common Shares to be Issued to VF; and |
| | 250,000 Common Shares to be Issued to Mr. Gilbert. |
| Options: | |
| | Jan 2012 –GILBERT retain a Option to acquire an additional 20% of the outstanding and issued common stock of Company. Gilbert's option to acquire an additional 20% of Company stock will include a provision whereby Gilbert will pay the Fair Market Value of Company as of January 2012 based upon a multiplier of earnings (EBITDA), minus a discount to Gilbert for helping guide and build the business. |
| | Jan 2015 – GILBERT retains another Option acquire up to 80% of the Company. Gilbert will utilize the same formula as stated hereabove. In addition, if Gilbert wishes to acquire all of the outstanding and issued stock, including all classes of stock, then Gilbert may negotiate with VF to acquire all remaining and outstanding stock in Company. |
| **Price Per Common Unit** | E1.00 per Common Share ("Original Purchase Price"). |
| **Expected closing date** | On or before January 31, 2010. |
| **Capitalization** | Total Common Stock (Founders): 1,000,000  (100%) |
| **(Fully Diluted/Common Unit Equivalents)** | Valley Wireless: 750,000  (75%) |
| | Mr. Gilbert: 250,000   (25%) |
| | **Total:**       **1,000,000  (100%)** |
| **Voting Rights:** | Holders of the Common Shares will be entitled to vote on all matters brought before the Shareholders of Company. |
| **Board Composition:** | The Board of Directors shall consist of not more than three members.  VF and his colleagues shall have two board seats. |

Exhibit __2__ Page __10__

**Intellectual Property**   All intellectual property generated by Company shall be assigned to NewCo. or to an IP Holding Company that shall be controlled by Company. Any and all future/derivative IP based upon the underlying Company IP shall also be owned by Company. All Shareholders of Company agree to execute any and all assignments of Intellectual Property to Company to perfect the ownership of all right, title and interest with any governmental body, or any other similar organization in another country.

Exhibit __2__ Page __11__

# EXHIBIT 3

Exhibit ___3___ Page___12___

(ECBS) Emergency Communications Broadcast System

A Tsunami Warning system for the Municipality of Papeete, Tahiti

# Early Warning Messages:

* *"Warnings have little value unless they reach those people most at risk—who must be trained to react to it."*

* *"Early warning systems must be understandable, trusted by, and relevant to the communities —which they serve."*



*Amy Minsk, Int'l Federation for Red Cross Society*

Exhibit 3 Page 14

# Early Warning Messages:

❖ "Once a tsunami warning is issued, the message needs to reach people rapidly."

❖ "Highly efficient notification and alert systems using multiple technologies is necessary for coastal communities prone to tsunamis and related hazards."

Clay Perreault, Engineer, iTare Wireless



Exhibit ___3___   Page ___15___

# Factors to Consider in Deploying a Tsunami Alert System



## *Targeting Populations-at-risk*

- *Who are recipients and where they are located*

- *What are the recipients doing and what is the plan of action upon receiving notification of a potential event*

- *How does the population receive local news and special bulletins*

- *What special needs do they have with respect to responding to a notification*

- *How well they understand / accept the warning in order to take action*

- *What is necessary to ensure continued communications during and after an event.*

**Exhibit** _3_  **Page** _16_

# Factors to Consider in Deploying a Tsunami Alert System

## *What necessary communications are necessary during to ensure safety & information dissemination?*



- During and after an event, communications become essential to ensuring the safety and health

- Coordination between police/fire departments and hospitals is critical for public safety and coordination of those needing emergency medical care.

- Security cameras and safety procedures are necessary to ensure adequate law enforcement.

- During an event, real time information dissemination is important to all of those in charge of public safety.

- Crisis reporting, sanitation/water management, telemedicine and status updates are critical to saving lives during a crisis.

**Exhibit** 3 **Page** 17

# (ECBS) Emergency Communications Broadcast System by Tiare Wireless



## *Primary Features*

- *Integrated Communications Platform using Satellite and Wireless Technologies*

- *"State of the Art" Information Retrieval and Rebroadcast*

- *Early warning capability and disaster management solutions*

- *Resilient and redundant communications during event*

- *Multi-media real time communications capabilities*

- *Fully integrated into existing operational systems*

- *Coordinated multiple agency communications links*

- *Encryption and secure communications capabilities*



**Exhibit** 3 **Page** 18



# (ECBS) Emergency Communications Broadcast System by Tiare Wireless

## Multi-media & Real time Communications

- Real time satellite data feeds (EMWIN/DART)
- Telephone & Video communications
- Redundant & Distributed local data processing infrastructure
- Fixed and mobile communications solutions

Tsunami Travel Times

Exhibit ____3____ Page ___19___

# (ECBS) Emergency Communications Broadcast System by Tiare Wireless

## Coordinated messaging via multiple methods

- Community wide "narrow casting" of data on strategically located information screens in schools, hotels, airports, ports, churches and emergency shelters

- Radio & Television Special Broadcasting Segments

- Cellular & Telephone - Massive Simultaneous Paging/SMS messages to all cell phones

- Internet/Web notifications throughout Islands

- Dynamic billboard systems change to emergency information displays during Tsunami Warning events

- Remote Activation/Deactivation of Community Sirens, Schools Bells and Church Bells

EMWIN / DART Data Satellite

Camera Video Recorder

Digital Broadcast Server

ECBS WebMail Server

SMS/Cellular Broadcast Server

IP PBX Telephone & Video Conference Server

INTERNET

**Exhibit** 3  **Page** 20

# (ECBS) Emergency Communications Broadcast System by Tiare Wireless

● *The design, construction and operation of a Tiare Wireless solution for emergency warning and communications differs from others for the following reasons:*



❋ *Independent*

❋ *Inexpensive & Sustainable*

❋ *Interoperable*

❋ *Scaleable*

❋ *Upgradeable*

Exhibit __3__   Page __21__

# (ECBS) Emergency Communications Broadcast System by Tiare Wireless

## ECBS Design Element #1 – Independent:



- ECRS provides a completely separate layer of communications infrastructure avoiding typical over-loading of public systems during events

- ERCS is self contained operationally independent of Internet availability)

Exhibit ___3___ Page ___22___

# (ECBS) Emergency Communications Broadcast System by Tiare Wireless

## ECBS Design Element #2 - Inexpensive & Sustainable

- The ECRS solution features a low cost of implementation and a low cost of operation, thus can be self sustaining with respect to the cost of operating the system within municipal budgets.

- The system can be deployed in phases to ease the burden on annual budgeting processes.

- ECRS can be used as a day to day system not just during emergencies, thus can lower municipalities operational costs from existing services.



**Police Surveillance Budget**
Shared Costs of Operations with municipal security & safety programs

**Municipal Telephone Budget**
Day to Day lowered Costs of Operations allow for additional fund availability Free Calling between all offices & Schools

**Schools Internet Budget**
Day to Day lowered Costs of Operations allow for additional fund availability Unlimited local data transfer & very high speed communications between all.

**Federal Emergency Budgets**

Exhibit 3 Page 23

# (ECBS) Emergency Communications Broadcast System by Tiare Wireless

## ECBS Design Element #3 - Interoperable:

- ECBS's modular design allows the integration of many communication technologies within its components to provide connectivity with legacy and new technologies as necessary.

- Video surveillance, VHF/UHF radio, WiMax, WiFi, Internet, Fibre Optics, Cellular, SMS, Telephone and Satellite communications converge into a single manageable platform.

EMWIN / DART Data TVRO Receive Only EMWIN & DART Buoy Data
Satellite Reiciver Two Way MSAT Voice and Data Communications

Analog & Digital Cameras
Camera Video Recorder Remote and Local Throughout Community

Live Data Feeds to Television
Live Data Feeds to Billboards
Digital Broadcast Server

TCP/IP Connectivity to Local Internet
and Public Global Internet
ECBS WebMail Server

E1 Connectivity to Legacy Telephone Network
Analog Connectivity to Existing PBX Telephones
SMS/Cellular
Broadcast Server

E1 Connectivity to Legacy Telephone Network
IP PBX Telephone & Video VoIP Telephone -> VHF Repeater Integration
Conference Server

Exhibit 3 Page 24

# (ECBS) Emergency Communications Broadcast System by Tiare Wireless

## *ECBS Design Element #4 - Scaleable:*

*   *ECRS can be implemented in phases throughout all areas in community over a period of months or years.*

*   *Coverage can be extensible to neighboring cities or islands as desired to assist other communities.*

### PHASE #1:

*Beach Hotels, Low Elevation Schools*
*Refuge Locations, Municipal Gov't Offices*
*Primary Police HQ, Primary Fire HQ*
*Primary Hospitals*

### PHASE #2:

*All Hotels, All Schools, All Gov't Offices*
*Local & Regional Police*
*All Fire Stations, All Hospitals*

### PHASE #3:

*Add Churches, Add Malls, Public Areas*
*Add Integration to other Municipalities*

Exhibit ___3___ Page 25

# (ECBS) Emergency Communications Broadcast System by Tiare Wireless

## ECBS Design Element #5 - Upgradeable:

- New communications capabilities can be added as they occur due to the use of state of the art communications technologies.

- Quarterly/yearly efficiency reviews can be implemented to ensure the system leverages new technologies and is optimized with existing legacy communication systems as they change.



Exhibit ___3___  Page ___26___

# (ECBS) Emergency Communications Broadcast System by Tiare Wireless





## ECBS - Major Components



* Independent / IP PBX Telephone System
* VHF Radio to IP Telephone Trunking
* Satellite EMWINS / DART Data feed
* Remote Siren Controls and monitoring
* City Wide Camera Surveillance for traffic, schools, refuge areas
* SMS Emergency Cellular Broadcast System
* TV Monitors in all Hotels, Schools, Hospitals, Airports
* 24 hours per day X 7 days per week X 365 days per year operation
* Completely Wireless Solution
* Digital Billboard Control for city wide alerts
* Solar / Battery Power for emergency operation

Exhibit ___3___ Page ___27___

# (ECBS) Emergency Communications Broadcast System by Tiare Wireless

## ECBS - A fully Integrated Tsunami Warning Communications System





Local Camera

School # Station MESH
WiMax/Wifi Hybrid Repeater

Solar Panel
Batteries

Outdoor Pan/Tilt/Zoom
Security Camera    Public Broadcast LCD TV

Cellular Phone & SMS

Laptop

IP Phone

### For More Information:

http://www.tiarewireless.com
clay@klondike.com
bobby@valleywireless.net

Exhibit ___3___ Page ___28___