# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>PRESTO TELECOMMUNICATIONS, INC., AND ALFRED LOUIS VASSALLO, JR. aka BOBBY VASSALLO,<br><br>　　　　　　　　　　　Defendants. | CASE NO. 04cv163-IEG(WMc)<br><br>Order Granting in Part Defendant's Motion to Stay Civil Contempt Proceedings |

　　　　This matter is presently before the Court on the motion filed by Defendant Alfred Louis Vassallo, Jr. ("Vassallo") to stay the civil contempt proceedings until the criminal charges against him are resolved. Upon consideration of the parties' arguments, for the reasons explained herein, the Court GRANTS IN PART Vassallo's motion.

## *Background*

　　　　By order filed October 26, 2010, the Court found there was clear and convincing evidence Vassallo violated the August 23, 2005 permanent injunction in this case by failing to pay disgorgement, civil penalties, and the Receiver's costs.  The Court bifurcated the SEC's allegations that Vassallo had violated the permanent injunction by engaging in conduct in violation of federal securities laws, and referred that matter to the United States Attorney for prosecution of criminal contempt under Fed. R. Crim. P. 42 and 18 U.S.C. § 401. The government has not yet

filed charges based on that referral. In addition, the government is conducting an investigation to determine whether to file independent criminal conspiracy charges against Vassallo, in either this District or the Central District of California, based upon conduct relating back to the Presto Telecommunica-tions fraud in 2004 and earlier.

### *Legal Standard*

"The Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings." <u>Keating v. OTS</u>, 45 F.3d 322, 324 (9th Cir. 1994). However, the court may exercise its discretion to stay a civil proceeding "when the interests of justice seem [to] require such action." <u>SEC v. Dresser Indus.</u>, 628 F.2d 1368, 1375 (D.C. Cir. 1980).

> The strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter. The noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of trial, or otherwise prejudice the case.

<u>Id</u>. at 1376.

In determining whether to stay the civil proceedings in the face of a parallel criminal proceeding, the first consideration is "the extent to which the defendant's fifth amendment rights are implicated." <u>Keating</u>, 45 F.3d at 325 (citing <u>FSLIC v. Molinaro</u>, 889 F.2d 899, 902 (9th Cir. 1989)). The court should also consider the following factors:

> (1) the interest of the plaintiffs in proceeding expeditiously with the litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interests of the public in the pending civil and criminal litigation.

<u>Keating</u>, 45 F.3d at 325.

### *Discussion*

Vassallo argues the Court should stay these civil contempt proceedings because he is unable to demonstrate his inability to pay the amounts set forth in the permanent injunction without waiving his Fifth Amendment rights. Vassallo is facing incarceration as the certain penalty for his civil contempt, and the only way he could purge himself of that contempt would be to

waive his Fifth Amendment rights. Under these circumstances, and considering the other <u>Keating</u> factors, Vassallo argues a stay is appropriate.

### *1.     Vassallo's Fifth Amendment right*

In order to avoid a finding of civil contempt, Vassallo has the burden of demonstrating he is currently unable to comply with the permanent injunction. <u>United States v. Bright</u>, 596 F.3d 683, 695 (9th Cir. 2010). The SEC argues Vassallo has not demonstrated that his Fifth Amendment rights would be implicated if he submits evidence of his inability to pay the amounts as ordered.

"The Fifth Amendment 'can be asserted in any proceeding, civil or criminal, ...; and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used'." <u>United States v. Bodwell</u>, 66 F.3d 1000, 1002 (9th Cir. 1995) (quoting <u>Kastigar v. United States</u>, 406 U.S. 441, 444-45 (1972)). "The standard for determining whether a claim of privilege is justified is 'whether the claimant is confronted by substantial and real, and not merely trifling or imaginary, hazards of incrimination'." <u>United States v. Vavages</u>, 151 F.3d 1185, 1192 (9th Cir. 1998) (quoting <u>United States v. Rubio-Topete</u>, 999 F.2d 1334, 1338 (9th Cir. 1993)). Although a witness ordinarily must assert the Fifth Amendment privilege in response to specific questions, the court may permit a blanket assertion of the privilege if, based on its knowledge of the case and the expected testimony, the court concludes "the witness could legitimately refuse to answer essentially all relevant questions." <u>United States v. Flores-Blanco</u>, 623 F.3d 912, 918 (9th Cir. 2010).

Here, the criminal contempt proceeding is based upon the SEC's allegation that Vassallo has engaged in the following conduct: (a) offering for sale and selling unregistered securities, (b) misrepresenting his ownership and control of companies for which he is soliciting investor funds, and further misrepresenting the potential for investor profits and how investor funds will be used, and (c) misappropriating investor funds. [Notice of Criminal Contempt Proceedings, Doc. 974, pp. 2-3.] Vassallo argues any explanation by him as to why he has not paid anything over the last five years is damaging to his criminal case because he will be forced to address the SEC's allegation that he has made nearly $400,000 during that time period from "illicit" conduct.

The SEC responds by arguing Vassallo has earned at least $27,000 in the last year from

1  non-fraudulent activities. [Declaration of James P. Varley, filed October 26, 2010, ¶4.] Vassallo
2  has not demonstrated how producing information regarding that legitimate income would be
3  incriminating. In addition, the SEC cites several cases for the proposition that Vassallo can choose
4  whether to invoke his Fifth Amendment privilege, and his choice does not require this Court to
5  stay the contempt proceeding. See SEC v. Brown, 2007 U.S. Dist. LEXIS 98410 (D. Minn. July
6  16, 2007) (where defendant had been notified he was a target of a grand jury investigation, district
7  court denied defendant's motion to stay SEC civil enforcement action, finding defendant failed to
8  demonstrate the issues presented in the civil and the as-yet to be filed criminal cases overlapped);
9  IBM v. Brown, 857 F. Supp. 1384, (C.D. Cal. 1994) (in RICO action, district court denied
10 defendant's motion to stay the civil action pending resolution of pending criminal proceedings
11 stemming from the same transactions alleged by IBM in its civil complaint, finding the corporate
12 defendants enjoyed no Fifth Amendment privilege and the individual defendants already testified
13 at deposition without asserting the Fifth Amendment privilege).
14        However, the cases cited by the SEC are distinguishable from the present proceedings.
15 The Court is persuaded that Vassallo has properly asserted the Fifth Amendment privilege in this
16 civil contempt proceeding, because nearly all the answers Vassallo could provide regarding his
17 inability to pay the disgorgement, civil penalties, and receiver's costs, could be used against him in
18 the criminal contempt proceeding. Even an exculpatory explanation as to why Vassallo has failed
19 to pay anything as ordered would provide the government with discovery with regard to the
20 criminal contempt proceeding, to which the government is not entitled under Fed. R. Crim. P. 16.
21 Vassallo's assertion of the Fifth Amendment privilege weighs heavily in favor of granting a stay of
22 the civil contempt proceeding until such time as the criminal contempt is resolved. In each of the
23 cases relied upon by the SEC, the defendant faced only the threat of monetary loss. Here, the
24 Court has already made clear that the only realistic civil contempt sanction it could impose is
25 incarceration. Thus Vassallo's assertion of his Fifth Amendment right may result in his
26
27
28

incarceration, and leave him without means to purge himself of his contempt.[1]

2. *Other* Keating *factors*

Notwithstanding Vassallo's assertion of his Fifth Amendment privilege, many of the other Keating factors militate against granting a stay. As set forth above, the additional factors a court should consider in deciding whether to stay a civil action are as follows:

> (1) the interest of the plaintiffs in proceeding expeditiously with the litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interests of the public in the pending civil and criminal litigation.

Keating, 45 F.3d at 325. The second factor, burden on defendant, favors granting a stay. In addition, the third factor, convenience of the court and efficient use of judicial resources, somewhat favors a stay because of the potential for overlapping issues between the civil and criminal proceedings.

The first, fourth, and fifth factors, however, all favor going forward with the civil contempt proceeding. The SEC, third-party investors, and the public, all have a strong interest in moving forward expeditiously with the civil contempt proceeding, to attempt to recover the disgorgement, civil penalties, and receiver's costs. Presto investors who were defrauded by Vassallo have been waiting for years for some portion of their money to be returned, and the receiver has been waiting for years to be compensated for his fees and costs. The government cannot criminally prosecute every violation of federal securities laws. The SEC must have a mechanism to not only obtain judgment against those who defraud investors, but also the ability to collect upon that judgment. If the SEC is unable to enforce its judgment against Vassallo by means of this civil contempt proceeding, the SEC, the investors, and the public are effectively left without a civil remedy.

Vassallo argues the looming criminal charges would necessarily include restitution to the victims. However, there is no currently pending criminal indictment encompassing the Presto

---

[1] The IRS summons cases cited by the SEC are also distinguishable. In both United States v. Rylander, 460 U.S. 752, 758 (1983) and CFTC v. Wellington Precious Metals, 950 F.2d 1525 (11th Cir. 1992), the courts held that a contemnor must go beyond the mere assertion he is unable to comply with an order, and establish he has in good faith made all reasonable efforts to comply. In neither case did the contemnor claim a Fifth Amendment right to remain silent in the face of a pending concurrent criminal proceeding.

1  Telecommunications fraud. The pending criminal contempt proceeding pertains only to Vassallo's
2  conduct *after* entry of the Preliminary Injunction. Therefore, that criminal contempt proceeding
3  would not address Vassallo's liability for defrauding investors prior to 2004. Government counsel
4  has represented to the Court and to defense counsel that there is an ongoing investigation which
5  may result in an independent indictment against Vassallo for conduct including the Presto
6  telecommunications fraud. Any such charges, however, are speculative at this time.

7  Balancing Vassallo's Fifth Amendment privilege against the other Keating factors, the
8  Court concludes it would be appropriate to stay this civil contempt proceeding for a brief period of
9  time, to allow the government to further explore whether it intends to seek an independent
10  indictment against Vassallo, or to proceed solely based upon the parallel criminal contempt
11  charge. If the government decides not to pursue an independent indictment encompassing the
12  underlying Presto Telecommunications fraud, the Court believes it may be possible to move
13  forward on the civil contempt proceeding notwithstanding a parallel criminal contempt charge. To
14  alleviate Vassallo's Fifth Amendment concerns, and to avoid providing discovery to the
15  government on the criminal contempt charge, the Court may be able to receive evidence *ex parte*.
16  The SEC may also decide it prefers to move forward on the civil contempt and have the criminal
17  contempt dismissed at this point. The Court will stay this case for a brief period of time to allow
18  these matters to be more fully investigated by counsel.

### *Conclusion*

20  The Court stays this civil contempt proceeding pending further order of the Court. On or
21  before *Monday, February 14, 2011*, the government and SEC must each file a status report with
22  the Court, ex parte and/or under seal as may be appropriate, indicating how the government and
23  SEC intend to proceed with regard to the civil contempt, criminal contempt, and any independent
24  criminal charges against Vassallo. The Court will hold a further hearing, or issue a further ruling
25  on Vassallo's motion to stay, following receipt of the status reports.

26  **IT IS SO ORDERED**.
27  **DATED: December 17, 2010**

28  _____
   IRMA E. GONZALEZ, Chief Judge
   United States District Court